**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**HBE CORPORATION,**

                           **Plaintiff,**

  vs.                                         **7:14-CV-145
                                                   (MAD/TWD)**

**HARLEYSVILLE GROUP, INC. and
HARLEYSVILLE INSURANCE COMPANY
OF NEW YORK,**

                           **Defendants.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**WHITEMAN OSTERMAN & HANNA LLP**     **WILLIAM S. NOLAN, ESQ.**
One Commerce Plaza                        **EMILY P. QUINLAN, ESQ.**
Albany, New York 12260
Attorneys for Plaintiff

**HURWITZ & FINE, P.C.**                    **DAN D. KOHANE, ESQ.**
424 Main Street                                **CASSANDRA A. KAZUKENUS, ESQ.**
1300 Liberty Building
Buffalo, New York 14202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff HBE Corporation ("HBE") commenced this action in New York State Supreme Court, St. Lawrence County, on January 3, 2014, alleging that Defendants Harleysville Group, Inc. and Harleysville Insurance Company of New York (collectively, "Harleysville") wrongfully denied HBE insurance coverage under a policy endorsement naming HBE as an additional insured under certain circumstances. *See* Dkt. No. 1-2 at 3-10. Harleysville removed the action to this Court on February 10, 2014. *See* Dkt. No. 1. Presently before the Court are HBE's motion

for partial summary judgment and Harleysville's motion for summary judgment. *See* Dkt. Nos. 25, 31.

## II. BACKGROUND

### A. The Demco Subcontract

HBE was the general contractor at a construction project at Samaritan Medical Center ("the Samaritan Project") in Watertown, New York. Dkt. No. 27 at ¶ 1. In November 2008, HBE entered into a subcontract with Demco New York Corporation ("Demco") that required Demco "to furnish all labor, material, supervision and equipment, tools, supplies, hoisting and scaffolding necessary to fully complete the electrical and emergency electrical system work" on the Samaritan Project. Dkt. No. 26-9 at 2 (emphasis omitted).[1] The subcontract required Demco to obtain insurance coverage including, *inter alia*, comprehensive general liability insurance naming HBE as an additional insured with respect to Demco's work on the Samaritan Project. *See id.* at 10. The subcontract also required Demco to furnish HBE with a certificate of proof of the aforementioned insurance coverage prior to starting work on the Samaritan Project. *See id.* On or about December 8, 2008, Demco furnished HBE with a Certificate of Liability Insurance providing that Demco was insured under a commercial general liability insurance policy underwritten by Harleysville for the period December 1, 2008 through December 1, 2009. *See* Dkt. No. 26-3 at 37. The Certificate of Liability Insurance further provided that HBE was named as an additional insured on the general liability policy for the Samaritan Project. *See id.*

### B. The Harleysville Policy

On December 2, 2008, Harleysville issued Demco commercial insurance package policy

---

[1] To avoid confusion, all references to specific page numbers for an entry on the docket will cite to the page number assigned by the Court's electronic filing system.

MPA 7G9336 ("the Policy"), effective December 1, 2008 to December 1, 2009. *See* Dkt. No. 26-5 at 5. The Policy included an endorsement labeled Commercial General Liability CG 20 33 07 04 ("the Additional Insured Endorsement"). *See id.* at 53. As relevant here, the Additional Insured Endorsement read:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

*Id.*

The Policy also contained the following provision within its commercial general liability conditions:

> **2. Duties In The Event of Occurrence, Offense, Claim or Suit**
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
> (1) How, when and where the "occurrence" or offense took place;
> (2) The names and addresses of any injured persons and witnesses; and
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
> b. If a claim is made or "suit" is brought against any insured, you must:
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
> (2) Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

*Id.* at 44.

**C.     The Underlying Action and HBE's Demand**

On October 19, 2012, Stephen A. Toth commenced an action against HBE and Samaritan Medical Center in New York State Supreme Court, St. Lawrence County, seeking damages for injuries he allegedly sustained while working on the Samaritan Project ("the Underlying Action"). *See* Dkt. No. 1-4 at 4-10.[2] Toth alleges that he was injured on October 22, 2009 while performing electrical work for Demco on the Samaritan Project. *See* Dkt. No. 26-11 at 3; *see also* Dkt. No. 26-10 at 14, 24 (confirming that Toth was employed by Demco on the Samaritan Project as a sub journeyman electrician). Specifically, Toth claims that while running conduit from the ground up to a ceiling panel, he fell from the third rung from the top of a ladder when the ladder was struck by an unsecured door frame that fell onto Toth and the ladder, causing the ladder to move and Toth to lose his balance and fall. *See* Dkt. No. 26-11 at 3. In the Underlying Action, Toth alleges claims for negligence and claims under New York Labor Law §§ 200, 240(1), and 241(6). *See* Dkt. No. 1-2 at 48-52.

HBE was served with Toth's complaint in the Underlying Action on November 12, 2012. Dkt. No. 27 at ¶ 17. On November 21, 2012, HBE notified Harleysville of the Underlying Action in writing and requested that Harleysville defend and indemnify HBE. Dkt. No. 26-3 at 2-4. By letter dated December 12, 2012, Harleysville disclaimed coverage based on its determination that HBE did not notify Harleysville of the claim as soon as practicable. *See* Dkt. No. 26-4. By letter dated May 22, 2013, Harleysville issued a second disclaimer of coverage based on its determination that Toth's injuries did not arise from the acts or omissions of Demco and therefore

---

[2] The Underlying Action is entitled *Stephen A. Toth v. Samaritan Medical Center and HBE Corporation F/K/A/ Kummer Enterprises, Inc.*, Index No. 139994. On January 4, 2013, Toth filed a notice of discontinuance against Samaritan Medical Center, leaving HBE as the only remaining defendant. *See* Dkt. No. 1-2 at 43-44.

4

did not trigger the Additional Insured Endorsement or indemnification under the subcontract between HBE and Demco. *See* Dkt. No. 26-7. To date, Harleysville has refused to defend or indemnify HBE in the Underlying Action. *See* Dkt. No. 1-2 at ¶ 24.

**D.     The Parties' Motions**

On January 3, 2014, HBE filed an amended complaint seeking a declaratory judgment that Harleysville has a duty to defend HBE from the claims in the Underlying Action and a duty to indemnify HBE for all sums up to the monetary limits of the Policy that HBE becomes legally obligated to pay by reason of resolution of the Underlying Action. *See* Dkt. No. 1-2 at 8-9. On February 2, 2015, HBE moved for partial summary judgment dismissing Harleysville's defense that its coverage obligation to HBE was never triggered because Demco did not cause the accident at issue in the Underlying Action. *See* Dkt. No. 28 at 5-6. On February 17, 2015, Harleysville cross-moved for summary judgment dismissing HBE's action in its entirety on two grounds. *See* Dkt. No. 31-7. First, Harleysville argues that HBE failed to provide Harleysville timely notice of the claim or occurrence forming the basis of the Underlying Action. *See id.* at 4. Second, Harleysville contends that because Toth's injuries were not caused by an act or omission of Demco, HBE does not qualify as an additional insured under the Policy. *See id.*

### III. DISCUSSION

**A.     Standard of review**

A court may grant a motion for summary judgment only if it determines "that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be

tried." *Id.* at 36-37 (quotation and other citation omitted). The movant has the burden of showing that no genuine factual dispute exists, and "where the movant 'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, '"even if no opposing evidentiary matter is presented,"' for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 160 (1970)).

In assessing the record to determine whether a genuine issue of material fact exists, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36. A party opposing a motion for summary judgment may not simply rely on the assertions in its pleading, but rather must "by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)). "If the record contains concrete evidence from which a rational trier of fact could render a reasonable verdict in favor of the non-moving party, summary judgment is improper." *Gonzalez v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 349 (S.D.N.Y. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**B.    Trigger of Coverage**

As set forth above, the Policy named HBE as an additional insured "with respect to liability for 'bodily injury', . . . caused, in whole or in part, by: 1. [Demco's] acts or omissions; or 2. The acts or omissions of those acting on [Demco's] behalf; in the performance of [Demco's] ongoing operations for the additional insured." Dkt. No. 26-5 at 53. HBE argues that this

6

language does not require negligence on the part of the named insured or its agents for an injury arising out of the named insured's operations for HBE to trigger additional insured coverage for HBE. *See* Dkt. No. 28 at 10-17. Harleysville argues that the endorsement language requires at the least that the injury be proximately caused by an act or omission of Demco or its agents to trigger coverage for HBE. *See* Dkt. No. 31-7 at 15-19. Harleysville further argues that the undisputed facts do not support a finding that Toth's injuries were proximately caused by an act or omission of Demco or its agents, and therefore that additional insured coverage for HBE is not triggered by Toth's suit. *See id.* at 15, 19.

HBE's argument is based on a body of law from the Appellate Division, First Department in which the court has consistently held that language similar to the Additional Insured Endorsement language here "does not require a negligence trigger." *W & W Glass Sys., Inc. v. Admiral Ins. Co.*, 91 A.D.3d 530, 531 (1st Dep't 2012). Specifically, the First Department has held that "[c]ontrary to defendants' argument that the 'caused by' language in the policy is 'narrower' than the 'arising out of' language in *BP Air Conditioning Corp. v. One Beacon Ins. Group*, [8 N.Y.2d 708 (2007)], . . . the phrase 'caused by . . .' does not materially differ from the general phrase, 'arising out of.'" *Id.* (internal citations omitted). Relying on the Court of Appeals' pronouncement that "the absence of negligence, by itself, is insufficient to establish that an accident did not 'arise out of' an insured's operations," *Hunter Roberts Constr. Grp., LLC v. Arch Ins. Co.*, 904 N.Y.S.2d 52, 56 (2010), the First Department thus concluded that an additional insured endorsement using the "caused by" language was triggered by an injury to an employee of the named insured that occurred while the employee was performing the named insured's work under the subcontract, irrespective of fault by the named insured, *see W & W Glass*, 91 A.D.3d at 531.

7

In cases subsequent to *W & W Glass*, the First Department has reaffirmed that under an additional insured endorsement containing language requiring the loss to be caused by an act or omission of the named insured, "the existence of coverage does not depend upon a showing that the named insured's causal conduct was negligent or otherwise at fault." *Burlington Ins. Co. v. N.Y.C. Transit Auth.*, 14 N.Y.S.3d 377, 383 (1st Dep't 2015); *see also Strauss Painting, Inc. v. Mt. Hawley Ins. Co.*, 105 A.D.3d 512, 513 (1st Dep't 2013) ("The additional insured endorsement speaks in terms of 'acts or omissions,' not negligence. Thus, in the unlikely event that it would be found that some nonnegligent act by [the named insured] caused the accident, the [additional insured] would still be entitled to coverage under the additional insured endorsement." (internal citations omitted)). In addition, although the First Department has required the injury or accident to be "causally connected to an 'act[]' of the named insured," *Burlington Ins.*, 14 N.Y.S.3d at 382, the court has found a sufficient causal connection based solely on the fact that "the underlying personal injury action arose out of an accident that occurred while [the named insured's employee] was acting on behalf of [the named insured] in the performance of its ongoing operations [for the additional insured]," *Nat'l Union Fire Ins. Co. of Pittsburgh v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474 (1st Dep't 2013); *see also Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 15 N.Y.3d 34, 38 (2010) ("[T]he focus of the inquiry 'is not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained.'" (quoting *Worth Constr. Co., Inc. v. Admiral Ins. Co.*, 10 N.Y.3d 411, 416 (2008))). Consequently, as it is undisputed that Toth was injured while acting on behalf of Demco in the performance of Demco's ongoing operations for HBE, the condition set forth in the Additional Insured Endorsement is met under the First Department's interpretation of the endorsement language.

Harleysville urges the Court to overlook the First Department's rulings and conclude that the phrase "caused by" has a narrower meaning than "arising out of" and thus requires something more than a showing that the injury was sustained in the course of the named insured's operations for the additional insured. *See* Dkt. No. 31-7 at 16-17. Harleysville directs the Court to *National Union Fire Insurance Company of Pittsburgh v. XL Insurance America, Inc.*, in which the Southern District of New York concluded that an additional insured endorsement containing the "caused by" language "requires a showing that [the named insured's] operations proximately caused the bodily injury for which [the additional insured] seeks indemnity." *XL Insurance*, No. 12 Civ. 5007, 2013 WL 1944468, *7 (S.D.N.Y. May 7, 2013). However, as Harleysville recognizes, in *XL Insurance*, the court was applying California law. *See id.* at *5. As California law did not "suppl[y] the proper interpretation of 'caused by,' which is the phrase that actually appears in the XL Policy," the court undertook an analysis of other jurisdictions' interpretations of the phrase "caused by" in additional insured endorsements. *Id.* at *6.

After acknowledging the First Department's *W & W Glass* decision, Judge Rakoff of the Southern District discussed a decision from the Eastern District of Pennsylvania in which Judge O'Neill "noted that [the Insurance Services Office] replaced 'arising out of' with 'caused by' [on its additional insured form] in response to the breadth of courts' interpretations of the former phrase, and in an attempt to require some causation on the part of the named insured before the additional insured endorsement is triggered." *Id.* (citing *Dale Corp. v. Cumberland Mut. Fire Ins. Co.*, Civ. No. 09-1115, 2010 WL 4909600, *5 (E.D.Pa. Nov. 30, 2010)). Judge O'Neill therefore concluded "that the additional insured provision [containing "caused by"] requires a showing that [the named insured's] acts or omissions were a proximate cause of [the injured party's] injuries in order to trigger the policy coverage." *Dale*, 2010 WL 4909600 at *7.

Judge Rakoff noted that "[u]nlike *Dale*, *W & W Glass* does not carefully parse the contractual language at issue, and places special interpretative emphasis on the broadness of an insurer's duty to defend, which is not at issue in this case." *XL Insurance*, 2013 WL 1944468 at *6 (citing *W & W Glass*, 91 A.D.3d at 531). Judge Rakoff additionally noted that "the Ninth Circuit has, in dicta, apprehended some difference between 'caused by' and 'arising out of.'" *Id.* (citing *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F.2d 659, 664 (9th Cir. 1960)). Thus, "[s]ubstantially in light of the Ninth Circuit's acknowledgment that 'caused by' is 'narrower' than 'arising out of,' the Court adopt[ed] the reasoning of *Dale*, and [held] that 'caused by' requires a showing that [the named insured's] operations proximately caused the bodily injury for which [the putative additional insured] seeks indemnity." *Id.* at *7.

If presented with the question in a vacuum, the Court might well agree with the well-reasoned decisions of Judge Rakoff and Judge O'Neill. However, as the Second Circuit has stated, "the absence of authority from New York's highest court does not provide [the Court] license to disregard lower court rulings nor to analyze the question as though we were presented with a blank slate." *Schoenefeld v. New York*, 748 F.3d 464, 469 (2d Cir. 2014) (citation omitted). Rather, "[w]hile [the Court is] not strictly bound by the decision of the Appellate Division, it is nevertheless a well-established principle that the ruling of 'an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 321 (2d Cir. 1999) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

Here, Harleysville has not provided the Court with sufficient persuasive evidence that the New York Court of Appeals would disagree with the First Department's interpretation.

10

Harleysville concedes that no other department of the Appellate Division has weighed in on the subject. *See* Dkt. No. 31-7 at 16. In support of its position, Harleysville directs the Court to *QBE Insurance Corporation v. Adjo Contracting Corp.*, where the Supreme Court, Nassau County, stated that "'arising out of' *might* accept an employment relation as a sufficient causal nexus, and the expression 'caused in whole or in part by' *might* exclude employment as sufficient nexus." *QBE Ins. Corp.*, No. 601695/2009, 2011 WL 3505475, *29 (N.Y. Sup. Ct. Apr. 5, 2011) (emphasis added), *rev' d in part*, 121 A.D.3d 1064 (2d Dep't 2014). However, the court's tenuous statement as to the proper interpretation of the two endorsement phrases was made in dicta, as the court concluded that the parties seeking additional insured coverage had alleged a causal nexus between the injuries and the named insureds' acts or omissions that would satisfy even the more stringent proximate cause nexus established in *Dale*. *See id.* Furthermore, on appellate review, the Second Department drew no distinction between the two phrases when analyzing whether the claims in the underlying action triggered the additional insured endorsements. *See QBE Ins. Corp.*, 121 A.D.3d at 1082.

Harleysville also points the Court to *International Business Machines v. United States Fire Insurance Company*, where the Supreme Court, New York County, construing language similar to the language of the Additional Insured Endorsement here, held that the injured party's "status as [the named insured's] employee does not constitute an 'act' or 'omission' attributable to [the named insured.]" *Int'l Bus. Mach.*, No. 603561/06, 2007 WL 2891408, *5 (N.Y. Sup. Ct. Sept. 24, 2007). Harleysville fails to acknowledge that the Supreme Court's decision in *International Business Machine* pre-dates the First Department's decision in *W & W Glass*, and thus has limited persuasive value.

Finally, Harleysville argues that the Court of Appeals has cited with approval the Fourth

11

Department's conclusion that "[t]he words 'arising out of' have 'broader significance than the words 'caused by,' and are ordinarily understood to mean originating from, incident to, or having connection with the use of [a vehicle insured under an automobile policy and excluded from a general liability policy]." *Aetna Cas. & Surety Co. v. Liberty Mut. Ins. Co.*, 91 A.D.2d 317, 320-21 (4th Dep't 1983) (quoting 6B Appleman, *Insurance Law & Practice* [rev. ed] § 4317). The Court of Appeals quoted this language in *Maroney v. New York Central Mutual Fire Insurance Company*, noting that the Fourth Department's analysis of "arising out of" applied narrowly to the automobile exclusion clause of a homeowners liability policy. *See* 5 N.Y.3d 467, 472 (2005). The Court of Appeals then concluded that "*in the uninsured premises realm*, the phrase 'arising out of' similarly requires only that there be some causal relationship between the injury and the risk for which coverage is provided." *Id.* (emphasis added) (internal citations omitted).

Thus, while *Maroney* provides some evidence that the Court of Appeals may interpret the phrase "caused by" as more narrow than "arising out of," the Court of Appeals' explicit limitation of its holding to "the uninsured premises realm" limits *Maroney*'s persuasive value on the issue of how the Court of Appeals would interpret the phrases in the context of an additional insured endorsement. Importantly, in *Maroney*, the Court of Appeals was concerned with not expanding coverage under a homeowners policy to injuries resulting from uninsured premises "that contained risks the insurer when underwriting the homeowners insurance policy declined to accept" by purposely excluding the premises from its policy. *See id.* In contrast, here, Harleysville's arguments implicate an insurer's duty to defend, which the Court of Appeals has described as "exceedingly broad" as to both additional insureds and named insureds. *Regal Constr.*, 15 N.Y.3d at 37 (quotation omitted). That is, "[a]n 'insurer will be called upon to provide a defense whenever the allegations of the complaint suggest . . . a reasonable possibility of

12

coverage.'" *Id.* (quoting *BP Air Conditioning*, 8 N.Y.3d at 714).

In sum, the Court is not persuaded that the Court of Appeals would reach a conclusion contrary to that of the First Department. The Court therefore concludes that under New York law, the condition set forth in the Additional Insured Endorsement is satisfied by HBE's undisputed showing that the Toth action arose out of an accident that occurred while Toth was performing work on behalf of Demco in the performance of Demco's ongoing operations for HBE. *See Greenwich Ins. Co.*, 103 A.D.3d at 474; *see also Kel-Mar Designs, Inc. v. Harleysville Ins. Co. of N.Y.*, 127 A.D.3d 662, 663 (1st Dep't 2015) ("The loss at issue in the underlying action—a personal injury suffered by an . . . employee [of the named insured] when he lost his footing on a stairway while working on a construction project—resulted, at least in part, from the 'acts or omissions' of the [named insured's] employee while performing his work (i.e., his loss of footing while on the stairway), regardless of whether the . . . employee was negligent or otherwise at fault for his mishap." (citations omitted)). Accordingly, Harleysville is obligated to defend and indemnify HBE as an additional insured under the Harleysville policy regardless of whether Toth was negligent in failing to use available safety equipment or failing to properly secure the ladder or otherwise at fault for the accident.

HBE's motion for partial summary judgment as to Harleysville's causation defense is therefore granted, and Harleysville's motion for summary judgment as to the causation defense is denied.

**C.     Timely Notice**

Harleysville also argues that it is entitled to disclaim coverage because HBE failed to notify Harleysville of Toth's accident "as soon as practicable," as required by the Policy. *See* Dkt. No. 31-7 at 11-14; *see also* Dkt. No. 26-5 at 44 (setting forth the insured's duty to notify

13

Harleysville of an occurrence, offense which may result in a claim, or claim made or suit brought against the insured "as soon as practicable"). Under New York law, "[i]t is well settled that the phrase 'as soon as practicable' is an elastic one, not to be defined in a vacuum." *Mighty Midgets v. Centennial Ins. Co.*, 47 N.Y.2d 12, 19 (1979). Moreover, "compliance with the insurance policy's temporal requirement [is not] to be measured simply by how long it was before written notification came forth. More crucial [is] the reason it took the time it did." *Id.*

Generally,

> [w]here the insured lacks knowledge that an accident or occurrence has occurred, or when the facts of the accident or occurrence are such that the insured would not reasonably believe that liability on his part will result, notice given by the insured "promptly after the insured received notice that a claim will be made against him" is reasonable.

*In re St. Clare's Hosp. & Health Ctr.*, 934 F.2d 15, 19 (2d Cir. 1991) (quoting *Merchants Mut. Ins. Co. v. Hoffman*, 56 N.Y.2d 799, 801 (1982)). Thus, "[t]he test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995) (citations omitted).

Accordingly, key to Harleysville's notice argument is the determination of when HBE had knowledge that Toth's accident had occurred. Harleysville contends that "[t]he unequivocal and uncontroverted testimony of Paul Morgan demonstrates that HBE knew of the accident and that Toth was injured shortly after the incident occurred." Dkt. No. 31-7 at 11. HBE argues that "Morgan's testimony is directly contradicted by the deposition transcript and declaration of Terry Totten . . . [which] creates an obvious question of fact requiring a trial on the issue of notice." Dkt. No. 34 at 13.

Morgan, who served as Demco's electrician foreman on the Samaritan Project, Dkt. No.

14

31-3 at 7-8, testified at his deposition that he was informed that Toth was injured the same day Toth's accident occurred, *id.* at 15. Morgan further testified that the day after Toth's accident, Toth brought Morgan a doctor's report confirming that Toth's wrist was either fractured or otherwise injured more seriously than Toth had initially realized. *See id.* at 16-17. According to Morgan's testimony, he then filled out an accident report regarding the incident. *Id.* at 17. Morgan further testified that he brought the accident report to Totten, HBE's on-site superintendent, who "made a copy of it for himself." *Id.* at 18.[3] As related by Morgan, Morgan and Totten then "went back to the job site and went to the area where the incident had happened and reviewed it." *Id.* at 19. Morgan asserts that during this conversation, Totten "said he was going to have the door bucks moved and placed in a more secure fashion." *Id.* at 23.

The accident report allegedly prepared by Morgan regarding Toth's accident appears nowhere in the record before the Court. In its Counterstatement of Facts, Harleysville cites to Exhibit C of its motion for summary judgment as evidence that "Morgan completed an accident report which detailed how Toth alleged the incident occurred, the injuries and whether there were any witnesses." Dkt. No. 31-6 at ¶ 40. However, Exhibit C to Harleysville's motion is an injury report regarding an accident suffered by an individual named Herb Handy on December 1, 2009. *See* Dkt. No. 31-4 at 3. Thus, the only evidence in the record before the Court that Morgan prepared an accident report pertaining to Toth's injuries is Morgan's own testimony.

In addition, Totten testified at his deposition that while acting as superintendent on the Samaritan Project, he did not personally receive an injury or accident report from any of the subcontractors on the project. Dkt. No. 31-2 at 13. Totten further testified that he never directly

---

[3] Morgan then mailed the original accident report to Demco's office in Syracuse, New York. Dkt. No. 31-3 at 18.

received a written report from any of the subcontractors regarding an accident. *Id.* at 13-14. In regards to receiving notice as to Toth's accident, specifically, Totten testified as follows:

> Q. When is the first time you heard the name Stephen Toth?
> A. When I was interviewed by, and help me with the name, Amy in your office.
> Q. By an employee in my office?
> A. Yes, sir.
> Q. And, to your understanding, was that after the lawsuit at issue was filed?
> A. Yes.
> Q. Did you ever learn while the Samaritan project was ongoing that a person named Stephen Toth had been injured at the site?
> A. No.
> Q. While the Samaritan project was ongoing, did you ever learn that any accident on site occurred involving a door frame falling into a ladder?
> A. No.
> Q. While the Samaritan project was ongoing, did you ever learn of any accident involving a door frame at all?
> A. Not to the best of my memory, no.

*Id.* at 14-15. Furthermore, when presented with an accident report pertaining to Toth's accident, Totten testified that he "ha[d] never seen that before this time." *Id.* at 15. Later, Totten again declared: "I have not seen this [accident report] nor do I remember Mr. Stephen Toth getting hurt on that project." *Id.* at 73-74. Additionally, when asked whether someone ever handed him that report, Totten answered in the negative. *Id.* at 74. Likewise, when asked "[s]o when Mr. Morgan testified that he handed you that report, you disagree?", Totten answered "I disagree." *Id.*

Totten also submitted a sworn declaration which reads, in relevant part, as follows:

> 6. To my knowledge, at no time did Stephen Toth, who I understand to be the Plaintiff in a legal action against HBE, notify HBE of any accident or injury.
>
> 7. I have no memory of ever receiving, and to my knowledge, at no time did Demco New York Corp. ("Demco"), who I understand to have been Mr. Toth's employer, notify HBE of any accident or injury involving Mr. Toth. During the course of the interviews of this case I have asked if there is an accident report to reference, and

16

> I have been told by my interviewers that they don't know that one exists.
>
> 8. I understand that Paul Morgan, who was the Superintendent on the Project for Demco, testified at his deposition that he personally handed me Mr. Toth's injury report, that we discussed the alleged accident, and that we went to the area where the alleged accident occurred and inspected it. I have no memory of this occurrence having happened. I further understand that Mr. Morgan testified that I told him I would "have the door bucks moved and placed in a more secure fashion." This is simply untrue, I gave no direction to have any of the door frames moved or secured in any other way, and I have no memory of discussing this with Mr. Morgan.
>
> 9. I was never notified of any accident or injury involving Stephen Toth, either by Demco or otherwise. I have no memory of ever hearing about or knowing Mr. Stephen Toth before being interviewed for this case. I may recognize him if I saw him but his name before this case was unknown to me.
>
> 10. Mr. Morgan never handed me (or otherwise provided me with) an injury report for Mr. Toth. I have no memory of talking to Mr. Morgan about an injury involving Mr. Toth. I have asked to see an accident report of both the plaintiff and respondent council, to refresh my memory and have been told that no such document exists.
>
> 11. I have no memory of ever having had a conversation with Mr. Morgan regarding door bucks, nor did I ever direct the door buck/frames to be moved or secured in any way other than the way they were stored on the project.
>
> 12. I have no memory of an accident involving door frames, and to my knowledge, at no time was HBE notified of any accident or injury involving a fall from a ladder involving door frames during the course of the Project.
>
> 13. I have stated to council on several occasions over the last few months, that before being interviewed for this case, I had no memory of a Mr. Stephen Toth and that I was not aware of an accident involving a Stephen Toth on the Samaritan Medical Center Project.

Dkt. No. 31-5 at ¶¶ 6-13.

Moreover, HBE also proffered testimony from Mary Biagioli, HBE's legal department

17

manager, that "[t]here is no indication that [HBE] had any information [of Toth's accident] until we got the lawsuit that Mr. Toth was injured on this jobsite." Dkt. No. 26-8 at 23. Biagioli further testified that prior to the commencement of the Underlying Action, HBE had no incident reports or other reports presented to it regarding Toth's accident. *See id.* at 47-49. According to Biagioli, had HBE received such notification, she would have expected it to appear on HBE's daily incident report for the Samaritan Project, in accordance with HBE's reporting expectations. *See id.* at 50. HBE's daily incident reports for the Samaritan Project contain no reference to Toth's accident or injuries. *Id.*

In light of the deposition testimony and sworn declarations set forth above, Harleysville's contention that "HBE does not and cannot deny that it knew of the accident and the fact that Toth was injured within days of the incident" is plainly contrary to the record. Dkt. No. 31-7 at 13. Harleysville argues that Totten's testimony and declaration should be ignored because "Totten admittedly altered the affidavit provided to him by counsel because in its original form it was unequivocal" and Totten wanted to "make it clear that he does not have a memory of [the accident]." *Id.* at 13-14. It is true that Totten testified at his deposition that he altered the sworn declaration drafted by HBE's counsel because

> [e]ach one of the declarations were an absolute that I don't
> remember this and this did not happen and this event did not happen
> and this event did not happen. I changed those to I don't remember
> this event happening. I don't remember anything about this event.
> So instead of an absolute, I put it into more of I don't remember any
> of this happening.

Dkt. No. 31-2 at 67. However, Harleysville's arguments as to the relative weight of Morgan's "unequivocal" testimony and Totten's arguably equivocal testimony implicate exactly the type of evaluation of the evidence and factual resolution that is inappropriate for the Court to undertake on summary judgment. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) ("On a motion

18

for summary judgment, the court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried.").[4]

"If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers*, 43 F.3d at 37. As set forth above, HBE has identified sufficient evidence in the record to permit a reasonable factfinder to find in its favor as to the issue of when HBE first became aware of Toth's accident. As a result, summary judgment for Harleysville on this issue would be improper, and the Court denies Harleysville's motion for summary judgment on the issue of timely notice.[5]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties's submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that HBE's motion for partial summary judgment as to Harleysville's causation

---

[4] Similarly, Harleysville's argument that Biagioli's testimony is of limited value because she was not on-site for the Samaritan Project is an argument as to the weight of HBE's evidence rather than an argument that HBE has failed to present evidence sufficient to create a genuine issue of material fact.

[5] HBE also argues that a triable issue of fact exists as to the date the Policy was delivered to Demco. *See* Dkt. No. 34 at 15-17. Harleysville must demonstrate prejudice before denying coverage based on untimely notice if the Policy was delivered on or after January 17, 2009. N.Y. Ins. Law § 3420(a)(5); 2008 N.Y. Sess. Laws Ch. 388 ("This act . . . shall apply to policies issued *or delivered* in this state on or after [the one hundred eightieth day after it shall have become a law] and to any action maintained under such a policy." (emphasis added)); *see also B & A Demolition & Removal, Inc. v. Markel Ins. Co.*, 818 F. Supp. 2d 592, 595 (E.D.N.Y. 2011) ("Based on the state legislature's guidance and the language of Section 3420(a), the prejudice rule applies to policies that were *either* issued *or* delivered after January 17, 2009. . . . Thus, the rule provides that an insurance contract that is issued *before* January 17, 2009 but delivered *after* that date will be governed by the amended Section 3420(a)."). Accordingly, as the record does not demonstrate the Policy's delivery date, the Court agrees that the date of delivery is a factual issue requiring resolution.

19

defense (Dkt. No. 25) is **GRANTED**; and the Court further

    **ORDERS** that Harleysville's motion for summary judgment (Dkt. No. 31) is **DENIED**; and the Court further

    **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 30, 2015
       Albany, New York

                                                      Mae A. D'Agostino
                                                      U.S. District Judge